**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL C. CURTIS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TYCO RETAIL HEALTHCARE GROUP, INC. | : | NO. 06-4302 |

**MEMORANDUM**

**Baylson, J.** **May 24, 2007**

## I. Introduction

On September 26, 2006, Plaintiff Michael C. Curtis filed a Complaint against his former employer Tyco Retail Healthcare Group, Inc. ("Tyco") alleging he was wrongfully terminated in violation of the American with Disabilities Act of 1990, 42 U.S. C. § 12101("ADA"), and entitled to recover unpaid wages under Pennsylvania's Wage Payment and Collection Law, 43 Pa. C.S.A. § 260.1. He amended that Complaint on November 13, 2006. Defendant Tyco has now filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Defendant's Motion is denied.

## II. Legal Standard

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the

plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

This Court has federal question jurisdiction over Plaintiff's ADA claim under 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367.

## III. Factual and Procedural Background

In his Amended Complaint, Plaintiff alleges he suffers from a disability as it is defined in Section 12102 of the ADA. Specifically, Plaintiff alleges he suffers from hypertension and an enlarged left ventricle in his heart caused by Type II diabetes. In January 6, 2003, he began working for Defendant as a maintenance mechanic. According to Plaintiff, his employment proceeded without incident until his doctor changed his diabetes medication in early March 2004. Because the new medication required him to take periodic breaks from the production line, Plaintiff informed Defendant of his condition and requested an accommodation from the rules normally forbidding such breaks. He claims that Defendant led him to believe that his request would be accommodated. Approximately a month and a half later, on April 28, 2004, Plaintiff alleges that one of his supervisors would not allow him to take a break to administer his medication, and he was forced to walk off the line without the supervisor's permission. He called Defendant's Production Superintendent shortly after the incident to complain about the supervisor's behavior. The Superintendent informed Plaintiff that he was being suspended from work without pay pending an investigation of the incident. Plaintiff alleges he called into work every day following the suspension and made a written request to review his personnel file on

May 6, 2004, but Defendant deliberately failed to meet and confer with him about the April 28 incident.  On May 7, 2004, Defendant discharged Plaintiff from his employment for insubordination.  He was fifty years old at the time.

Plaintiff then filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  On June 29, 2006, the EEOC issued a determination stating that, although the Plaintiff had met all timeliness and jurisdictional requirements for coverage, it was unable to conclude that the Plaintiff has been discriminated against under the ADA or the Age Discrimination in Employment Act ("ADEA").  The EEOC issued Plaintiff a right to sue letter.  Plaintiff then filed an action with this Court asserting an employment discrimination claim under the ADA and a state law claim to recover unpaid wages.

## IV.   Discussion

Defendant's Motion to Dismiss or, alternatively, for Summary Judgment does not address the question of whether the factual allegations in Plaintiff's complaint state a cause of action under either the ADA or Pennsylvania state law.  Instead, Defendant argues that Plaintiff's EEOC charge was brought after the end of the requisite limitations period and is therefore untimely.  Plaintiff responds that his charge was timely filed, and Defendant's Motion should accordingly be denied.

A plaintiff bringing a claim under the ADA for employment discrimination must comply with the procedural requirements laid out in Title VII of the Civil Rights Act of 1964.  See 42 U.S.C. § 2000e-5; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Title VII requires an employee to file a charge with the EEOC within 300 days after an alleged unlawful employment practice occurred.  See 42 U.S.C. § 2000e-5(e)(1).  This charge must "be

in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." Id. § 2000e-5(b). The EEOC regulations further specify that a charge must be verified by being "sworn to or affirmed before a notary public . . . or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3, 1601.9.

According to Defendant, Plaintiff did not file a charge as it is defined in the ADA and the underlying regulations until December 6, 2005, 578 days after Plaintiff was terminated. Because that filing falls far outside the 300 day designated statutory period required by Title VII, Defendant maintains that this Court lacks jurisdiction to hear Plaintiff's claims. While Defendant concedes the Plaintiff submitted a "Charge Information Questionnaire" ("Information Questionnaire") to the EEOC on December 20, 2004, a filing that fell within the 300 day statutory period, it argues that the Questionnaire does not constitute a "charge" as defined by the statute. In addition to citing several cases in support of this interpretation, the Defendant also relies on a statement in the Information Questionnaire itself, which is attached to its filing, "REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 300 days of the alleged discrimination."

Defendant also argues that Plaintiff is not entitled to equitable tolling because Plaintiff's circumstances are in no way exceptional or extraordinary. Finally, Defendant contends that Plaintiff's claim should be dismissed under the doctrine of laches because Plaintiff's delay in filing an EEOC charge prejudiced the Defendant.

Plaintiff's response tells a very different story. Plaintiff first points out that the EEOC's determination with respect to his claim expressly states that the "timeliness and all other jurisdictional requirements have been met." In addition, Plaintiff asserts his attorney sent a letter

to the EEOC on September 3, 2004 enclosing a completed Discipline Questionnaire and requesting the commencement of an EEOC investigation of his discharge. Plaintiff argues that the information included with this Questionnaire alone is sufficient to meet the requirement that a grievant submit a charge to the EEOC within 300 days. Moreover, according to the Plaintiff, this submission to the EEOC included a request signed by the Plaintiff under penalty of perjury to dual file his grievance with the Pennsylvania Human Relations Commission ("PHRC").

After receiving this information, Plaintiff asserts that the EEOC then assigned a charge number to his claim in late 2004 and sent him a number of additional questionnaires to complete, including the Information Questionnaire noted by Defendants. After the Plaintiff submitted the completed Information Questionnaire to the EEOC on December 20, 2004, he maintains he periodically followed up with the EEOC to ascertain the status of his claim, and the EEOC repeatedly assured him that Defendant would not be able to raise an issue about the timeliness of his EEOC charge.

Furthermore, Plaintiff maintains that the delay in filing a formal charge was entirely the result of delay by the EEOC. Plaintiff asserts that the EEOC failed to send him a formal charge for his review and signature and did not request Plaintiff to appear at its office until November 21, 2005, eleven months after he submitted the Information Questionnaire and well beyond the 300 day deadline. During that meeting, an EEOC inspector interviewed him and began drafting a "Charge of Discrimination" ("Charge"). According to the Plaintiff, under the internal procedures of the EEOC in effect at the time, the preparation and service of the Charge were the responsibility of the EEOC and not the grievant. When the inspector did not complete the Charge during the meeting, the Plaintiff requested and was given a copy of the Charge – which

was not the EEOC's typical practice – which he completed and returned signed to the EEOC within ten days after the November 21 meeting. Finally, Plaintiff states that the EEOC assured him that the Discharge Questionnaire he submitted on September 3, 2004 "stopped the clock" with respect to the running of any time limitations for submitting a charge.

Although the Defendant has moved in the alternative for the Court to grant summary judgment on the basis of the timeliness of Plaintiff's EEOC charge, the Court will not treat the present motion as one for summary judgment. Plaintiff relies in his brief on the standard applicable to a motion to dismiss and specifically notes the need for additional discovery on the timeliness issue: "Discovery will prove out that Plaintiff's efforts to specifically have the EEOC commence an investigation and docket a charge on his behalf began no later than September 3, 2004 . . . . Of course, the EEOC proceedings are discoverable as well." (Pl.'s Br. 6.) At the same time, in deciding this motion to dismiss, the Court will consider the papers filed by the parties, including any "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case."[1] See Buck, 452 F.3d at 260 (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that, in deciding a motion to dismiss, courts may consider the allegations contained in the complaint, exhibits attached to the complaint and matters of public record, including government agency records); Kuper v. Colonial Penn Ins.

---

[1] Plaintiff submitted several additional record documents to this Court on February 23, 2007, which he attaches as exhibits to his Motion for Leave to File a Surreply Brief. Because these papers are referenced in Plaintiff's original response and are central to the timeliness issue raised by the Defendant's Motion, the Court will consider these exhibits in deciding the present motion to dismiss.

Co., No. 99-172, 1999 WL 317077, at *1 (E.D. Pa 1999) (considering various documents generated or maintained by EEOC in its investigation and processing of plaintiff's discrimination charge when deciding motion to dismiss).

The Third Circuit has acknowledged documents other than a formal charge, if verified, may satisfy the "charge" requirement laid out in Title VII of the Civil Rights Act of 1964. Buck, 452 F.3d at 261. Plaintiff has submitted four documents to this Court which appear to be signed under penalty of perjury, and therefore verified under the EEOC regulations and Title VII. See Kuper, 1999 WL 317977, at *3 (holding that an EEOC Conduct Related Discipline Questionnaire signed under penalty of perjury is a verification satisfying Title VII's requirement that all charges be filed under oath or affirmation). First, Plaintiff has submitted a copy of an Allegations of Employment Questionnaire, which appears to be have been signed and dated by the Plaintiff on December 10, 2004. Second, he includes the first and last page of an Intake Questionnaire, signed and dated December 7, 2004. Third, Plaintiff submits a copy of a letter from his attorney transmitting a Discipline Questionnaire to the EEOC, dated September 3, 2004, and the signature page of the Discipline Questionnaire itself, signed and dated on September 2, 2004. Plaintiff's signature on all three questionnaires appears under the statement: "I swear or affirm under penalty of perjury that the provided information is truthful and correct to the best of my knowledge." Finally, Plaintiff attaches a copy of his application to dual file his charge of discrimination with the PHRC, signed and dated under penalty of perjury on November 24, 2004.

As is clear from this documentation, Plaintiff submitted a number of verified questionnaires to the EEOC well within the 300 day limitations period. While these questionnaires were not the formal "Charge," which appears to be have been signed on

December 1, 2005, these forms may satisfy the charge requirement for statute of limitations purpose under certain circumstances.  The Third Circuit has not addressed the question of when a writing submitted to the EEOC can constitute a charge for purposes of the ADA, but it has addressed this issue in the context of the ADEA.  In Bilher v. Singer, the Third Circuit held a writing submitted to the EEOC alleging a violation of the ADEA may be considered a charge if it is "of a kind that would convince a reasonable person that the grievant has manifested an intent to activate the Act's machinery."  Bihler v. Singer Co., 710 F.3d 96, 99 (3d Cir. 1999).  Several other circuit courts of appeals have adopted this  "manifest intent" approach and extended it to the Title VII context.  See, e.g., Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1319 (3d Cir. 2001) (adopting the same test and noting the Seventh and Eighth Circuits have extended the Bihler approach to the ADA context).  Moreover, the Third Circuit has at least implicitly approved extending the Bilher approach to cases brought under Title VII.  See Buck, 452 F.3d at 265 (citing Wilkerson for proposition that intake questionnaire might serve as a charge in certain circumstances); Kocian v. Getty Refining & Mktg. Co., 707 F.2d 748, 752 n.3 (3d Cir. 1983) (noting that ADEA and Title VII have been given parallel constructions because of the similarities in purpose and structure between the two statutes) (overruled on other grounds); but see Ricciardi v. Consol. Rail Corp., No. 98-3420, 2000 WL 1456736, at *2  (E.D. Pa. Sep. 29, 2000) (noting charge requirements outlined in the ADA are stricter than those in the ADEA).

      The court in Wilkerson outlined the facts a court should generally examine in determining whether an intake questionnaire or similar document will function as a charge:  what the claimant and the EEOC said to each other, what the questionnaire form itself indicated, and how the EEOC responded to the questionnaire.  See Wilkerson, 270 F.3d. at 1320.  In this case, all of

Plaintiff's factual assertions would lead a reasonable person to conclude that Plaintiff intended to activate the machinery of Title VII, at the latest, by December 2004. On at least two separate occasions prior to the 300 day deadline, Plaintiff submitted documents to the EEOC signed under penalty of perjury containing detailed allegations about Defendant's allegedly discriminatory behavior. He first filed papers with the EEOC in September 2004. When the EEOC responded by assigning his claim a charge number and requesting additional information, he complied and submitted several additional questionnaires in December 2004.

After he completed those submissions in December 2004, Plaintiff claims the EEOC repeatedly assured him that his claim was timely and that the Defendant could not raise a limitations objection. This assertion is further supported by a letter from the EEOC to Defendant's counsel, dated February 17, 2006, which is attached to Defendant's motion, in which the EEOC's representative writes "it is the Commission's position that the fact that the charge was perfected on December 6, 2005, does not defeat our processing of this charge" and notes that they were initially contacted by the Plaintiff on December 20, 2004. This contention is bolstered by the EEOC determination itself, which expressly states that Plaintiff had met the timeliness requirements for coverage.

While the Information Questionnaire referred to by the Defendants does contain a general statement that a charge of discrimination must be filed with in the 300 day time limit, there is no indication that the document itself could not function as a charge. In light of Plaintiff's allegations and the attached documentary evidence, this Court cannot conclude that Plaintiff has failed to a state a claim upon which relief can be granted because his charge was untimely filed. Defendant's overly formalistic interpretation of what constitutes a charge for purposes of the 300

day filing requirement is contrary to the flexible Third Circuit standard outlined in Bihler.

Moreover, even if this Court were to conclude that Plaintiff had not filed a charge within the 300 day limitations period, he would still be entitled to equitable tolling. The Supreme Court has held that timely filing of a discrimination charge with the EEOC "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). As noted above, Plaintiff asserts that the EEOC told him on a number of occasions that Defendant could not raise a time limitations objection. "A plaintiff may justifiably rely on formal communications with the EEOC." Guzelin v. Drexel University, No. 98-3004, 1999 WL 153720, at *4 (E.D. Pa. Mar. 19, 1999); see also Dawn Jones v. Eagle Indus. Hygiene Assocs., Inc., No. 04-1184, 2004 WL 1576652, at *2-3 (E.D. Pa. July 14, 2004) (applying equitable tolling where EEOC failed to send plaintiff the formal charge for her review and signature within limitations period). In such cases, equitable tolling may be applied where the EEOC led the grievant to believe that filing a charge would be proper even though the limitations period had passed or where any delay in filing the charge was due to the EEOC's own "bureaucratic delay." Plaintiff alleges that any delay in filing the final charge was due to the EEOC's delay in scheduling an intake appointment. Once he finally met with an EEOC representative, he promptly completed the charge form and submitted it to the EEOC. This set of facts, if proven, would entitle him to equitable tolling and, as such, defeats a Motion to Dismiss.[2]

---

[2] Defendant's defense of laches also fails at this stage of the proceedings. While Defendant argues that it has been prejudiced by Plaintiff's delay because several employees who are familiar with Plaintiff's work history and "integral to the Defendant's defense" have since left the company, viewing the facts in the light most favorable to the Plaintiff, there is no indication that these individuals possess knowledge directly relevant to his discrimination claim or, if they

## IV. Conclusion

Taking the facts pleaded in the Plaintiff's Amended Complaint as true for purposes of the present Motion to Dismiss, the Plaintiff has adequately alleged facts that he complied with the 300 day limitations period for the filing of an EEOC charge. For this reason, Defendant's Motion to Dismiss will be denied. Furthermore, because this Court is denying the Defendant's Motion to Dismiss, Defendant's alternative Motion for Summary Judgment will be denied as moot. After the parties have had the opportunity to engage in discovery, the Defendant may then renew its motion.

An appropriate Order follows.

O:\CIVIL\06-4302 Curtis v. Tyco\Curtis v. Tyco, 06-4302 MTD Opinion.wpd

---

do, that Defendant will be unable to contact them and persuade them to testify. See Dawn Jones, 2004 WL 1576652, at *3. The costs of contacting these witnesses and preparing them to testify are no different than those undertaken by any other party involved in a litigation.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL C. CURTIS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TYCO RETAIL HEALTHCARE GROUP, INC. | : | NO. 06-4302 |

**ORDER**

AND NOW, this 24th day of May, 2007, it is hereby ORDERED that the Defendant's Motion to Dismiss the Complaint (Doc. No. 3) is DENIED and Defendant's Alternative Motion for Summary Judgment is DENIED AS MOOT with leave to renew after the parties complete discovery.

Plaintiff's Motion for Leave to File a Surreply Brief and Exhibits (Doc. No. 12) is GRANTED in part and DENIED in part insofar as the Court has considered the documentary exhibits attached to that motion in deciding Defendant's Motion to Dismiss.

A Rule 16 scheduling conference will be held by telephone on June 13, 2007 at 4:30 p.m. with the Honorable Michael M. Baylson. Plaintiff will initiate the telephone conference and when all counsel are on the line, call Chambers at (267) 299.7520.

BY THE COURT:

s/Michael M. Baylson

Michael M. Baylson, U.S.D.J.