IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL C. CURTIS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TYCO RETAIL HEALTHCARE | : | |
| GROUP, INC.[1] | : | NO. 06-4302 |
| | : | |

**MEMORANDUM RE: MOTION FOR SUMMARY JUDGMENT**

**Baylson, J.**                                                                                     **July 31, 2008**

**I.   Background**

    **A.   Factual Background**

This is an employment discrimination action, before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 35). Plaintiff's Amended Complaint (Doc. No. 2) alleges the following: in Count I, Plaintiff claims that Defendant violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12102 et seq., when it fired Plaintiff because he had diabetes. In Count II, Plaintiff claims that Defendant violated the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260. et seq., by failing to compensate Plaintiff for his unused vacation time when Defendant terminated him.

Plaintiff was employed by Defendant as a maintenance mechanic between January 6, 2003, and May 7, 2004. During this time, Plaintiff usually worked the second shift at the Tyco facility in King of Prussia, Pennsylvania, but often worked overtime shifts as well. Plaintiff

---

[1] Since the action was filed, Defendant has changed its name to Covidien Retail Products.

1

alleges that he has a disability as defined by the ADA because he suffers from hyptertension and an enlarged left ventricle in his heart, incident to Type II diabetes. These conditions require Plaintiff to monitor his blood sugar and take insulin injections and other related medications, which help to control many of his symptoms.

On March 8, 2004, Plaintiff informed his regular production supervisor, Susan Lenhart ("Lenhart"), that he had diabetes and that he needed special accommodation for his condition. Lenhart instructed Plaintiff to speak to Danielle Lehman ("Lehman") in Human Resources. Plaintiff asked Lehman for an accommodation for his condition: he asked for occasional breaks away from the production line and a clean environment in which to monitor his sugar and insulin levels. After this meeting, Plaintiff was allowed to take occasional breaks, as his condition required and did so on at least one occasion. (Lenhart Depo. at p. at 16).

During the time Plaintiff was employed at Tyco, his regular treating physician, Dr. Charles Buttz, never placed any restrictions on Plaintiff's activities due to his medical condition. Plaintiff admits that while he was working at Tyco, as long as he took his medication and monitored his insulin levels, there was nothing he could not do that other healthy people could do. Plaintiff's medical condition never forced him to take any time off pursuant to the Family Medical Leave Act or to be hospitalized. (Pl.'s Depo. at 345 and 452-53).

On April 27, 2004, while Plaintiff was working overtime into a third shift, he had a verbal altercation with one of his production supervisors, Danita Savage ("Savage"). Plaintiff and Savage disagree on exactly what transpired, but it appears that an argument arose between them when Savage asked Plaintiff to perform an additional work assignment. Another Tyco employee, San Seng, was also present during the disagreement. Savage contends that Plaintiff behaved in

2

an insubordinate manner, threatening her by raising his voice and pointing his finger in her face. Savage claims that Plaintiff told her "Lady, I don't want to talk to you or nobody else, I am heated right now, I need to just leave for your sake as well as for me." (Wilson's Depo. at Ex. F-5). Savage claims that she did not know about Plaintiff's medical condition and that Plaintiff never asked her for a break for medical reasons during the incident. San Seng testified at his deposition that he has no recollection of the incident.[2]

Plaintiff does not deny that he argued with Savage, but he denies threatening Savage, calling her "lady," and waiving his finger in her face. He claims that he was feeling ill because of his diabetes and needed a break, but admits that he never explained his medical condition to Savage. (Pl.'s Depo. at pp. 177-178 and 481-482). Plaintiff disagrees with Savage's characterization of his behavior as "insubordinate."

In response to the altercation, Savage suspended Plaintiff. She took away his time card which acted as his security pass to get in and out of the Tyco facility. Savage claims she did not know that Plaintiff suffered from diabetes or that he required breaks to take his medication.

When Plaintiff left the Tyco facility, Savage called her supervisor, Production Superintendent Jarvais Wilson, and told him about the incident. At Wilson's request, Savage then wrote up a description of the incident. The day after the incident, Plaintiff contacted Mr. Wilson to voice a complaint about Savage's behavior. Plaintiff claims that he told Wilson that "I needed a break. I was sick," but admits that he did not tell Wilson about his medical condition or

---

[2] San Seng's deposition was not originally submitted into the record as an exhibit by either party. After briefing had been completed, Plaintiff's counsel mailed a copy of this deposition to the Court, and assured the Court that Defendant's counsel already had a copy of the document.

3

that he needed the break due to this condition. (Pl.'s Depo. at p. 175). Wilson informed Plaintiff that he was suspended from employment without pay pending an investigation.

Defendant claims that the argument between Savage and Plaintiff was not the first time Plaintiff had been insubordinate to his superiors at Tyco. Prior to the incident with Savage, Plaintiff had complained to Lenhart about an error in his paycheck in a manner which Lenhart characterized as "irrate and unrespectful." (Lenhart's Depo. at p. 139-40). In addition, on or about February 25, 2004, Plaintiff approached Wilson because he believed that there was an error on his most-recent paycheck. Wilson testified that Plaintiff was confrontational and angry and raised his voice. (Wilson's Depo. at p. 22-23). Wilson prepared a written report of this incident which was placed in Plaintiff's file, but the company did not discipline Plaintiff for his behavior.

On May 5, 2004, while Plaintiff was suspended from Tyco, Plaintiff came to Tyco and obtained a security badge from a security guard, which granted him access to the Tyco facility. Plaintiff acknowledges that he got a badge from the security guard and did not tell the guard that he had been suspended and had his badge taken, but claims that he never explicitly lied to the guard. Plaintiff asserts that he told the guard that the guard was in possession of Plaintiff's badge, at which point the guard gave Plaintiff his badge without further inquiry. (Pl.'s Statement of Disputed and Undisputed Facts, Doc. No. 43, at ¶ 38)

Plaintiff was terminated from Tyco on May 7, 2004. The reasons given for this termination were insubordination to management and telling an untruth to gain access to the Tyco facility. (Def.'s Mot. for Summ. J., Doc. No. 35, Ex. F). Five members of Tyco management made the decision: Wilson, Leni Cuonze, Kevin Johnson, Barry Hart, and Steve DeAngeleis. Wilson, Cuonze, and Johnson have testified either in deposition or sworn statement

4

that they were not aware of Plaintiff's medical condition and that the issue was never raised in their discussion of whether or not to terminate Curtis. (Id. at Exs. C, F, and G).

After Defendant's Motion for Summary Judgment had been fully briefed by both sides, Plaintiff supplemented the record with his own declaration ("Plaintiff's Declaration") which contradicted his prior deposition testimony. In Plaintiff's Declaration, Plaintiff testified that: "Before Mr. Wilson told me that he had decided to fire me, I notified Steve DeAngelis and Jarvais Wilson of my disabilities (diabetes) and that I was supposed to be able to take breaks whenever necessary, and that Human Resources', especially Yancey, Lenhart, and Lehman, had determined to allow such an accommodation and inform those who may question it." [sic] (Declaration of Michael C. Curtis at ¶16). Plaintiff does not indicate when or where this conversation took place. He did not mention the conversation during his deposition, even though he was questioned at length about his interactions with different members of the Tyco management team, before and during his termination meeting. (Pl.'s Depo. at pp. 175-78 and 194). The Court will refuse to consider the statements made in the Plaintiff's Declaration, as the A Court must ignore an offsetting affidavit that is submitted in opposition to a motion for summary judgment when the affidavit contradicts the party's prior deposition testimony. Baer v. Chase 392 F.3d 609, 624 (3rd Cir. 2004) (stating that a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict).

As to Count Two of the Complaint, Plaintiff alleges that Defendant did not compensate him for two weeks of vacation time which he believes he had accrued at the time he was fired, and for appearing at work on May 7, 2004. Tyco's vacation policy allows an employee to take

5

one week of vacation in his first year of employment at Tyco and two weeks of vacation in his second year. In Plaintiff's first year as a Tyco employee, 2003, he earned and took one week of vacation. From January 1, 2004 until the date of Plaintiff's termination on May 7, 2004, Plaintiff had earned less than one week of vacation time and he testified that he took a week's vacation in April, 2004. (Pl.'s Depo. at ¶ 53). Plaintiff admits that Tyco's official policy states that he was only entitled to one week of vacation time in his first year of employment. (Pl.'s Depo. at p. 487).

Plaintiff appeared at Tyco on May 7, 2004, to attend his termination meeting. He admits that he did not perform any work that day but insists that he is entitled to "Reporting Pay" in the form of four hours worth of wages at his standard hourly rate.

In Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, Plaintiff asks to add a Count III to his Amended Complaint, asserting a claim under the Pennsylvania Human Rights Act ("PHRA"). (Doc. No. 43 at p. 2). At oral argument, Defendant objected to this additional claim as untimely.

**B.    Procedural Background**

This case is now before the Court, after an extensive period of discovery, on Defendant's Motion for Summary Judgment (Doc. No. 35). Plaintiff responded to Defendant's Motion (Doc. No. 43) and Defendant filed its Reply Brief (Doc. No. 45). The Court heard oral argument on all outstanding motions on June 25, 2008.[3]

---

[3] At oral argument, the Court invited the parties to submit supplemental briefing as to two issues: (1) whether an employer can be liable under the ADA for the failure to provide an employee with a reasonable accommodation which the employer's Human Resources Department had previously afforded him, but where the particular supervisor who denied the employee's request had no actual knowledge of the employee's disability; (2) whether the Court

6

Plaintiff initially filed a Complaint against Defendant on September 26, 2006. (Doc. No. 1). An Amended Complaint was filed on November 13, 2006. (Doc. No. 2). Defendant filed a Motion to Dismiss pursuant to 12(b)(6) (Doc. No. 3) to which the Plaintiff responded. (Doc. No. 9). Defendant submitted a Reply to Defendant's Response. (Doc. No. 10). The Court denied Defendant's Motion to Dismiss on May 25, 2007.

## II.   Legal Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the

---

can find that an employer's legitimate nondiscriminatory reason for terminating an employee is pretextual because of insufficient discovery as to the identity of a person involved in the decision.

adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

The burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) is the appropriate analysis for summary judgment motions in cases alleging employment discrimination. Holness v. Penn State University, No. 98-2484, 1999 WL 270388, at *14 (E.D. Pa. May 5, 1999).

**II.  Parties' Contentions**

    **A.  ADA Claim**

Defendant contends that the Court should grant summary judgment as to Plaintiff's ADA claim because: (1) Plaintiff is not disabled as defined by the ADA; (2) Plaintiff cannot prove that the reason Tyco gave for terminating him was a pretext for discrimination.

Defendant asserts that Plaintiff cannot make out a *prima facie* case of disability discrimination because Plaintiff's medical condition – diabetes – does not rise to the level of severity which the ADA requires. Defendant points out that Plaintiff's treating physician, Dr. Buttz, has testified that Plaintiff can perform any major life activity of an average person in the population. At no time during Plaintiff's employment at Tyco did Dr. Buttz place any restrictions on Plaintiff's activities, due to his medical condition. (Dr.Buttz's Depo. at pp. 33,

46-47, and 81).

Plaintiff counters that he is disabled under the ADA standard but does not offer any specific evidence to support this claim. Instead, he relies on Herman v. Kvaerner of Philadelphia Shipyard Inc., 461 F. Supp. 2d 332 (E.D.Pa. 2006), in which summary judgment was denied, where Plaintiff claimed to be disabled because of his diabetes. Plaintiff quotes several consecutive pages from the opinion, but fails to compare the facts discussed in the opinion to the set of facts in this case.

Defendant contends that even if Plaintiff was able to make out a prima facie case for disability under the ADA, Plaintiff could not prove that the legitimate non-discriminatory reason articulated by Defendant as the reason for terminating Plaintiff was a pretext for discrimination. Defendant alleges that it fired Plaintiff because of his insubordinate conduct and gaining access to the Tyco facility under false pretenses. Defendant points out that all the members of Tyco's staff involved in the decision to terminate him have testified that they were unaware of Plaintiff's medical condition at the time Plaintiff was terminated and therefore could not and did not take it into account. Defendant asserts that Plaintiff has offered no evidence to show that Defendant's stated reasons for terminating Plaintiff were a pretext for discrimination.

Plaintiff counters that Defendant has not produced adequate evidence to support its contention that Plaintiff was fired for reasons other than his disability. Plaintiff claims that Defendant unfairly mis-characterized his behavior as insubordinate and that there is not enough evidence to support Defendant's claim that Plaintiff acted in a deceitful manner when he attempted to enter the Tyco facility after his security badge had been confiscated. To support this claim, he argues that the security guard who gave Plaintiff his security badge back after it had

9

been confiscated testified that Plaintiff was five feet seven inches tall, when in fact this is not his true height. Plaintiff also argues that his termination was improper because he had received no prior corrective or disciplinary action. Defendant admits that Plaintiff had not previously been disciplined at Tyco, but contends that this does not raise any issue of material fact because progressive disciplinary steps are not mandated under Tyco's corrective action policy or under the law.

### B.   WPCL Claim

Defendant claims that under Tyco's employment policy, Plaintiff is not entitled to any compensation for vacation time or unpaid wages. Defendant asserts that in his first year of employment, the calendar year of 2003, Plaintiff took one week of vacation time, which was the maximum amount of time he was allowed. In his second year at Tyco, Plaintiff was eligible to earn a total of two weeks vacation time, but he was terminated in May when he had accrued less than a week of vacation time. Plaintiff took one week off in April 2004, so Tyco claims that under their policy, it does not owe Plaintiff any vacation time. Defendant also claims that it does not owe Plaintiff any uncollected wages for May 7, 2004, because on that day, Plaintiff did not do any work for Tyco. Defendant asserts that Plaintiff came to the Tyco facility for his termination meeting and did not earn any wages by virtue of attending this meeting. Plaintiff does not respond to these arguments.

## IV.   Discussion

### A.   Plaintiff May Add a Claim under the PHRA

The PHRA states that "an action under this subsection shall be filed within two years after the date of notice from the Commission closing the complaint." 43 P.S. § 962.2 (2008).

The EEOC closed Plaintiff's complaint and issued him a right to sue letter on June 29, 2006. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, which requested the addition of the PHRA claim, was filed on February 26, 2008–within two years of the EEOC closing Plaintiff's complaint before it. Therefore, the Court will allow Plaintiff to add a PHRA claim to its Complaint. The Court notes, however, that claims filed pursuant to the PHRA are analyzed under the same framework as the ADA. See Williams v. Philadelphia Housing Authority Police Dept., 380 F.3d 751, 761 n. 6 (3d. Cir. 2004). Accordingly, the Court will hereafter only discuss Curtis's ADA claim because analysis of that claim is coterminous with the analysis of the PHRA claim.

**B.     Tyco Did Not Fail to Provide Plaintiff with A Reasonable Accomodation**

Plaintiff argues that Tyco violated the ADA by failing to provide him with a reasonable accommodation – a break – when he argued with Savage on April 27, 2004. Plaintiff does not dispute that Savage herself did not know about Plaintiff's diabetes at the time. However, Plaintiff argues that the Court should treat Savage as if she had constructive knowledge of his condition because Plaintiff had reported it to Tyco's HR Department, and therefore hold Defendant liable for failing to provide him with an adequate accommodation. However, most of the case law does not support Plaintiff's position. Though the Third Circuit has not directly ruled on this issue, other circuits and a district judge in this circuit have held that a manager cannot be responsible for discriminating against an employee whom he did not know was disabled. See Bobbs v. Allegheny Energy Service Corp., 2007 WL 2428659 at *6 (W.D.Pa. Aug. 22, 2007) (holding that the defendant could not be liable for terminating the plaintiff because of a disability about which the plaintiff's superior knew nothing); Cordoba v. Dillard Inc., 419 F.3d 1169, 1183

11

(11th Cir. 2005) (rejecting the argument that an employer could be held liable for constructive or assumed knowledge); and Hedberg v. Indiana Bell Tel. Co. Inc. 47 F.3d 928, 931-33 (7th Cir. 1995); but see Kimbro v. Atlantic Richfield Co. 889 F.2d 869 (9th Cir. 1989) (holding that supervisor's knowledge of the plaintiff's disability could be imputed to management). This Court concludes that constructive knowledge of a corporate entity is not sufficient for liability if Plaintiff's supervisor who imposed discipline or refused accommodation was ignorant of Plaintiff's disability. Therefore, Savage's refusal to grant Plaintiff a break at the time of their argument did not constitute a failure on the part of Tyco to provide Plaintiff with a reasonable accommodation because Savage had no knowledge of Plaintiff's alleged disability.

### C. The Court Will Grant Defendant's Motion for Summary Judgment Regarding Plaintiff's ADA Claim

#### i. Prima Facie Case

In order to establish a prima facie case of discrimination under the ADA Plaintiff must demonstrate that (1) he is a disabled person within the meaning of the ADA; (2) he was otherwise qualified to perform the essential functions of the job; (3) and he has suffered an adverse employment action as a result of discrimination. Gaul v. Lucent Tehcnologies, 134 F.3d 576, 580 (3d Cir. 1998). The ADA defines a disability as: (a) a physical or mental impairment that substantially limits one or more major life activities of an individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment. 42 U.S.C. § 12102(2). "Major life activities include such matters as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, sitting, standing lifting, and reaching. Kralik v. Durban, 130 F.3d 76, 78-79 (3d Cir. 1997).

Whether or not a plaintiff suffers from a disability is an individualized inquiry that must be made with regard to the conditions suffered by the specific plaintiff in question. Sutton v. United Airlines, 527 U.S. 471, 483 (1999). Being a diabetic does not automatically mean one is disabled under the ADA: the Supreme Court has stated that it would be wrong and "contrary to the letter and spirit of the ADA" to determine that a plaintiff is disabled merely because he suffers from diabetes." Id. at 483-84. Furthermore, if mitigating action, such as taking medication, can correct an individual's impairment, he is not considered disabled under the ADA. Id. at 482-83.

Plaintiff has submitted no facts to support a jury finding that he should be considered disabled under the statute. To the contrary, Plaintiff's treating physician has stated that when he took his medication, there were no activities which members of the general population could engage in that Plaintiff could not. (Buttz Depo. at P. 64). See Hughes v. City of Bethlehem, 2007 WL 954120 *8 (E.D.Pa. March 27, 2007) (holding that a diabetic employee was not disabled under the ADA where employee failed to put forth sufficient evidence of an impairment and the treating physician did not place any restrictions on her activity).

### ii.  Burden Shifting and Pretext

Even assuming arguendo that Plaintiff was able to make out the elements of a prima facie case, this does not necessarily entitle him to a trial. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-56, (1981). The Defendant satisfies its burden by introducing evidence, which, if taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable

employment decision. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). The defendant need not prove that the tendered reason actually motivated its behavior because the ultimate burden of proving intentional discrimination always rests with the plaintiff. Id.

Assuming Defendant has satisfied its burden (and there are facts to support this) it is then Plaintiff's burden to rebut Defendant's proffered legitimate non-discriminatory reason by showing that it is merely a pretext for discrimination. Fuentes, 32 F.3d at 764. Plaintiff can make a showing of pretext by submitting evidence that either (a) casts sufficient doubt upon the legitimate reason proffered by Defendant so that the factfinder could reasonably conclude that the Defendant's stated reason is a fabrication; or (b) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. Id. As the Court will explain below, Plaintiff has failed to meet his burden under either prong of Fuentes.

    a.    Fuentes, Prong 1

To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent. Id. at 762 citing Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 533 (3d Cir. 1992) cert denied, 510 U.S. 826 (1993). Instead, the nonmoving party must demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons. Fuentes, 32 F.3d at 765.

14

Plaintiff's subjective belief that Tyco's decision to terminate him was wrong does not provide adequate evidence that Defendant's legitimate reason was merely a pretext for disability discrimination. See Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991) overruled in part on other grounds by St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993) ("the fact that an employee disagrees with an employer's evaluation of his does not prove pretext"). Plaintiff does not dispute the steps taken by Tyco prior to its decision to fire him, nor does he offer any evidence that Defendant took these steps because of his disability. See Andy v. United States Parcel Servs Inc., 2003 WL 22697194, at *9 (E.D.Pa., Oct. 24, 2003) aff'd 111 Fed.Appx. 670 (3d Cir. Nov. 1, 2004) (Court must look only at the perception of the decision maker, not the plaintiff's own view of his performance).

Defendant has provided evidence which Plaintiff has failed to rebut, mainly in the form of deposition testimony from various members of its staff including Wilson, Savage, Lenhart, which clearly establishes it terminated Plaintiff because of his insubordinate behavior and because he entered the Tyco facility under false pretenses. Plaintiff does not dispute that he had an altercation with Savage, nor that he entered the facility without permission. (Pl.'s Depo. at pp. 177-178, 199-206, and 481-482). Therefore, even if Plaintiff could show that he suffered from a disability as defined by the ADA, he has no proof that Defendant fired him because of that disability. Fuentes, 32 F.3d at 764 ("to avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action.") See Kautz v. Met. Corp. 412 F.3d 463, 467 (3d Cir. 2005) (affirming the district court's grant of summary judgment

where the plaintiff did not meet his burden of showing that the defendant proffered legitimate non-discriminatory reason was a pretext for discrimination) and <u>Logan v. Countrywide Home Loans</u>, 2007 WL 879010 at *6 (E.D.Pa. March 15, 2007) (Pollak, J.) (holding that nonmoving plaintiff must point to evidence contradicting the core facts put forward by the employer as the legitimate reason for the adverse employment action).

Plaintiff claims that Tyco's initial failure to disclose the identity of Stephen Buchanan as one of the individuals involved in making the decision to terminate Curtis is an inconsistency that calls into question the validity of Tyco's legitimate non-discriminatory reason. However, the Court believes, based upon Defendant's representations, which are not effectively contradicted, that its failure to disclose Buchanan's name was an honest oversight, which Defendant remedied when it was brought to its attention. As Plaintiff deposed Buchanan, whose testimony was consistent with that of another of Defendant's witnesses, Plaintiff has failed to show that this mistake prejudiced him in any way. Furthermore, Plaintiff has not presented any case law holding that the Court should deny summary judgment because of a relatively minor discovery violation. Therefore, the Court will grant summary judgment despite this minor discovery infraction.

      b.    <u>Fuentes</u>, Prong 2

Under the second prong of the test set out in <u>Fuentes</u>, Plaintiff could establish that Defendant's proffered reason was pretextual by showing that an "invidious discriminatory reason was in fact, more likely than not a motivating or determining cause of his termination." <u>Logan</u>, 2007 WL 879010, at *6, (citing <u>Fuentes</u>, 32 F.3d at 764). There are several ways a plaintiff might go about meeting this prong: first, the plaintiff may show that the employer has previously

16

discriminated against him, that the employer has previously discriminated against other disabled people or members of a different protected class, or that the defendant has treated more favorably similarly situated people not within the protected class. See, e.g., Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cir. 1998). Second, Plaintiff might show pretext with overt evidence of discriminatory animus or indirect evidence of an ulterior actionable motive for the adverse employment action. For example, discriminatory comments by non-decision-makers in the workplace, even if temporally remote from the decision at issue, may be properly used to build a circumstantial case of discrimination. See Abrams v. Lightolier Inc., 50 F.3d 1204, 1214 (3d Cir. 1995).

Curtis has failed to present any direct or circumstantial evidence that would allow a jury to find that Defendant harbored discriminatory animus toward disabled people. He does not even contend that the people responsible for terminating him knew he was disabled: all the decision makers who were either deposed or offered declarations in this case – Wilson, Leni Cuonze, Kevin Johnson, and Steve Buchanan – have stated that they did not know that Plaintiff suffered from diabetes. Plaintiff fails to raise a genuine issue of material fact under either prong of Fuentes, and therefore, the Court will grant summary judgment as to Plaintiff's ADA claim.

**D.     The Court Grants Defendant's Motion for Summary Judgment Regarding Plaintiff's WCPL Claims**

Plaintiff has failed to offer any evidence that he is entitled to any unpaid vacation time or unpaid wages. Defendant's claims that Plaintiff (1) used all of his vacation time prior to his termination and (2) is not entitled to be paid for any wages May 7, 2004, remain uncontested. Therefore, the Court will grant Defendant's Motion for Summary Judgment as to these claims.

### E.     The Court Grants Summary Judgment on Plaintiff's Retaliation Claim

In his Response to Defendant's Motion for Summary Judgment (Doc. No. 43), Plaintiff argues, summarily, that Defendant retaliated against him. There is some question as to whether Plaintiff has exhausted his administrative remedies for a retaliation claim: Plaintiff claimed retaliation before the EEOC, stating that he was terminated in retaliation for having made a request to view his personnel file. The EEOC ruled that this assertion was not a basis for a retaliation claim under the ADA. (Def.'s Reply Brief, Doc. No. 45, Ex. 6). However, it appears that Plaintiff's current factual basis for retaliation is different. Plaintiff's Amended Complaint (Doc. No. 2) alleges retaliation, but none of Plaintiff's briefing argues specifically in what manner Defendant retaliated against Plaintiff. At oral argument on June 25, 2008, the Court asked Plaintiff's counsel if and how he intended to allege a claim of retaliation. Counsel responded in general terms that Plaintiff complained to his supervisor, Savage, and that his termination constituted retaliation for this complaint.

Assuming that the Court would allow Plaintiff to bring a claim of retaliation because Plaintiff's current factual basis for retaliation is different, Plaintiff has failed to present sufficient facts to substantiate a prima facie case. In order to establish a prima facie case of retaliatory discharge a plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; (3) there is a causal connection between the protected activity and the adverse employment action. Moore v. City of Philadelphia, 461 F.3d 331, 340-341 (3d Cir. 2006). As discussed above, Plaintiff has no proof that he was terminated solely because of his interchange with Savage or that his termination had anything to do with his diabetes. As Plaintiff has not offered any evidence to prove his general assertion, Defendant's Motion for Summary

18

Judgment as to this claim will be granted.

## V. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment as to all Claims.

An appropriate order to follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL C. CURTIS | : CIVIL ACTION |
| v. | : |
| TYCO RETAIL HEALTHCARE GROUP, INC. | : NO. 06-4302 |

## ORDER

And now, this 31st day of July, 2008, for the reasons stated in the foregoing memorandum, and after considering the briefs and oral argument, the Court GRANTS Defendant's Motion for Summary Judgment (Doc. No. 35), and enters judgment in favor of Defendant and against Plaintiff. The Clerk shall close this case.

BY THE COURT:

/s/ Michael M. Baylson
Michael M. Baylson, U.S.D.J.

O:\CIVIL\06-4302 Curtis v. Tyco\Curtis v. Tyco, S.J. Memo.wpd